UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

QUDUS ADEBOWALE,

*Plaintiff,*

- against -

METROPOLITAN TRANSPORTATION AUTHORITY; NEW YORK CITY TRANSIT AUTHORITY; MTA POLICE SERGEANT KEVIN LAVELLE, Shield No. 522; MTA POLICE OFFICER CHRISTOPHER AHEARN, Shield No. 3011; MTA POLICE OFFICER SANDRA FIGUEROA, Shield No. 2636; and JOHN/JANE DOES 1–5,

*Defendants*.

Civil Action No.: 1:26-cv-04329

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Qudus Adebowale, by and through his attorneys, The Alber Firm, P.C., alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action under 42 U.S.C. § 1983 and New York law arising from the arrest of Qudus Adebowale for evading a $2.90 transit fare that he had in fact paid.

2. On the evening of April 22, 2025, MTA Police officers stopped Mr. Adebowale as he left the Tompkinsville Station of the Staten Island Railway and accused him of jumping a turnstile. He had swiped his MetroCard and paid his fare minutes earlier. The officers arrested him anyway, handcuffed him, and took him into custody. During the roughly eighteen hours that followed, Mr. Adebowale was twice transported to a hospital emergency room for dangerously elevated blood pressure. His sweatshirt and sweatpants were confiscated, and he was held overnight in a cold cell with a man charged with murder.

3. The next morning, the MTA Police Department received the station surveillance video it had requested. The video showed Mr. Adebowale swiping his MetroCard and paying the

fare. The Department voided the arrest, notified the Richmond County District Attorney's Office, and released Mr. Adebowale without arraignment, but only after he had spent nearly eighteen hours in custody for an offense that the Department's own video showed had never occurred.

4. Plaintiff seeks compensatory and punitive damages, attorneys' fees, and such further relief as the Court deems just.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because this action arises under 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative fact as his federal claims.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Richmond County, New York.

**JURY DEMAND**

8. Plaintiff demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

**CONDITIONS PRECEDENT TO THE STATE LAW CLAIMS**

9. On June 25, 2025, within ninety days of the accrual of his claims, Plaintiff served a notice of claim on the New York City Transit Authority through its Department of Law–Claims, in the manner directed by the Authority, in compliance with General Municipal Law § 50-e and Public Authorities Law §§ 1212 and 1276. The notice was received, acknowledged, and processed on behalf of the Authority Defendants by the Legal Department of the Metropolitan Transportation Authority.

10. On October 31, 2025, Plaintiff appeared for and testified at a statutory hearing conducted by counsel for the Metropolitan Transportation Authority on behalf of the Authority Defendants pursuant to Public Authorities Law § 1212 and General Municipal Law § 50-h.

11. More than thirty days have elapsed since service of the notice of claim, and the Authority Defendants have neglected and refused to adjust or pay the claim.

12. This action is commenced within one year and ninety days of the accrual of Plaintiff's state law claims. Public Authorities Law §§ 1212(2), 1276(2).

## PARTIES

13. Plaintiff Qudus Adebowale is, and at all relevant times was, a resident of Richmond County, New York.

14. Defendant Metropolitan Transportation Authority ("MTA") is a public benefit corporation organized under Public Authorities Law § 1263. The MTA operates and maintains the MTA Police Department ("MTAPD") and employs its police officers. See Public Authorities Law § 1266-h.

15. Defendant New York City Transit Authority ("NYCTA") is a public benefit corporation organized under Public Authorities Law § 1201 and an affiliate of the MTA. NYCTA operates the Staten Island Railway, including the Tompkinsville Station and the fare-collection system that Plaintiff was falsely accused of circumventing. The Railway is owned by the Staten Island Rapid Transit Operating Authority, a subsidiary of the MTA. The MTA and NYCTA are together the "Authority Defendants."

16. Defendant Kevin Lavelle, Shield No. 522, was at all relevant times a patrol sergeant with the MTAPD, acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

17. Defendant Christopher Ahearn, Shield No. 3011, was at all relevant times a police officer with the MTAPD, acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

18. Defendant Sandra Figueroa, Shield No. 2636, was at all relevant times a police officer with the MTAPD, acting under color of state law and within the scope of her employment. She is sued in her individual capacity.

19. Defendants John/Jane Does 1–5 are presently unidentified MTAPD officers, supervisors, or employees who participated in, supervised, or acquiesced in Plaintiff's stop, arrest, detention, or continued detention. They are sued in their individual capacities. Lavelle, Ahearn, Figueroa, and Does 1–5 are together the "Individual Defendants."

## FACTUAL ALLEGATIONS

### A. The Arrest

20. On April 22, 2025, Mr. Adebowale, then thirty-one years old, rode the Staten Island Railway to the Tompkinsville Station in Richmond County. He swiped his MetroCard at the turnstile and paid the required $2.90 fare.

21. At approximately 7:03 p.m., as Mr. Adebowale crossed the pedestrian bridge connecting the station to Bay Street, Defendant Lavelle stopped him. Defendants Ahearn and Figueroa joined the stop.

22. Lavelle claimed to have observed Mr. Adebowale jump over a turnstile to avoid paying the fare. That claim was false. Mr. Adebowale had paid, and the station's own surveillance video later confirmed his payment.

23. Mr. Adebowale was unarmed and cooperative. He did not flee, resist, or threaten anyone. He questioned the basis for the stop, as was his right.

24. At approximately 7:11 p.m., the Individual Defendants arrested Mr. Adebowale on the bridge, in full public view. They handcuffed him tightly enough to cause immediate pain and a burning sensation in both wrists, despite his complaints about the tightness. They transported him to MTAPD District 9 at 331 Bay Street, Staten Island, where he was searched, booked, and processed.

25. Mr. Adebowale was charged with a single count of theft of services in violation of Penal Law § 165.15(3), a class A misdemeanor. The sole asserted predicate for the arrest and the charge was Lavelle's claimed observation of a turnstile jump.

**B. The Refusal to Issue a Desk Appearance Ticket**

26. Theft of services is an offense for which the Criminal Procedure Law authorizes a desk appearance ticket. See CPL § 150.20. Mr. Adebowale identified himself with a photograph of his New York driver's license bearing his NYS Client ID. He had no outstanding warrants or detainers, was cooperative, and posed no risk of flight or harm.

27. Officers told Mr. Adebowale that because he was on parole, he was "required" to be taken into custody, and that theft of services is an "arrestable offense." No provision of the Penal Law or the Criminal Procedure Law requires custodial arrest of a person under parole supervision for a ticket-eligible misdemeanor. Mr. Adebowale was in full compliance with his parole conditions, and no warrants or detainers existed in connection with his parole status.

28. The Individual Defendants refused to issue a desk appearance ticket and told Mr. Adebowale that he would be lodged at an NYPD facility until arraignment.

**C. The Night in Custody**

29. Twice during his detention, Mr. Adebowale was transported by ambulance to Richmond University Medical Center for dangerously elevated blood pressure—a stress-induced

hypertensive condition caused by his unlawful arrest and confinement. Each time, he was treated and returned to a cell.

30. After returning from the hospital, Mr. Adebowale was held overnight in a cell with a man charged with murder. His sweatshirt and sweatpants had been confiscated, and he was left cold throughout the night.

**D. The Video and the Voided Arrest**

31. On the evening of the arrest, the MTAPD requested surveillance video from the Tompkinsville station house.

32. At approximately 10:00 a.m. on April 23, 2025, while Mr. Adebowale remained in custody, the MTAPD received the video by email. As the MTAPD's own supplemental report records, the video "depicted that the individual did swipe a metrocard at the turnstile paying for the fare."

33. Upon supervisory review of the video, the arrest was voided. Captain Russell and the Richmond County District Attorney's Office were notified. The District Attorney declined to prosecute.

34. Mr. Adebowale nonetheless remained in custody for hours after the MTAPD received the video that conclusively exonerated him. He was released in the early afternoon of April 23, 2025, without ever being arraigned, approximately eighteen hours after his arrest.

35. Defendant Lavelle authored the supplemental report memorializing these events on April 28, 2025; it was approved on April 30, 2025.

**E. Injuries and Damages**

36. As a direct and proximate result of Defendants' conduct, Mr. Adebowale suffered injuries to both wrists and ankles, pain in his neck and back, and dangerously elevated blood pressure that twice required emergency hospital treatment.

37. Mr. Adebowale has suffered and continues to suffer anxiety, insomnia, panic episodes, and intrusive recollections of the incident, for which he receives counseling and treatment, including at Samaritan Daytop Village.

38. Mr. Adebowale lost approximately $10,000 in wages because of the arrest and its aftermath and incurred medical and related expenses.

39. Mr. Adebowale endured the humiliation of a public arrest, booking, and processing, and the complete deprivation of his liberty for approximately eighteen hours, for an offense that never occurred.

**FIRST CAUSE OF ACTION**
**False Arrest – 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments)**
**(Against the Individual Defendants)**

40. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41. The Individual Defendants seized and arrested Plaintiff without probable cause or other legal justification. The sole asserted predicate for the arrest—an observed turnstile jump—was false, as the station's surveillance video conclusively established.

42. The confinement was intentional; Plaintiff was conscious of it and did not consent to it; and it was not otherwise privileged.

43. As a direct and proximate result, Plaintiff suffered the damages described above.

**SECOND CAUSE OF ACTION**
**Unreasonable Continued Detention – 42 U.S.C. § 1983 (Fourth Amendment)**
**(Against the Individual Defendants)**

44. Plaintiff repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45. By approximately 10:00 a.m. on April 23, 2025, the MTAPD possessed video evidence conclusively negating any arguable probable cause for Plaintiff's arrest and detention. Any legal basis for detaining Plaintiff ended at that point, if it ever existed.

46. The Individual Defendants nonetheless caused or permitted Plaintiff's detention to continue for hours after the MTAPD received the exculpatory video, in violation of the Fourth Amendment.

47. As a direct and proximate result, Plaintiff suffered the damages described above.

**THIRD CAUSE OF ACTION**
**Excessive Force – 42 U.S.C. § 1983 (Fourth Amendment)**
**(Against the Individual Defendants)**

48. Plaintiff repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49. In the course of an arrest that was itself unlawful, the Individual Defendants handcuffed Plaintiff—who was compliant and unresisting—so tightly as to cause pain, a burning sensation, and injury to both wrists, and disregarded his complaints.

50. The force used was objectively unreasonable under the circumstances and proximately caused Plaintiff's injuries.

**FOURTH CAUSE OF ACTION**
**Failure to Intervene – 42 U.S.C. § 1983**
**(Against the Individual Defendants)**

51. Plaintiff repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

52. Each Individual Defendant who did not directly participate in the violations described above observed them, knew or should have known they were unlawful, and had a realistic opportunity to intervene to prevent or curtail them, yet failed to do so.

53. As a direct and proximate result, Plaintiff suffered the damages described above.

**FIFTH CAUSE OF ACTION**
**Municipal Liability – 42 U.S.C. § 1983 (Monell)**
**(Against the Authority Defendants)**

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. Plaintiff's arrest was made under the MTAPD's "Quality of Life Initiative," an enforcement program directed at fare evasion and similar low-level offenses. On information and belief, the Authority Defendants, through their policymakers, maintained policies, practices, and customs of effecting custodial arrests for alleged fare evasion without adequate regard for probable cause or for statutory desk-appearance-ticket criteria, including a practice of subjecting persons under parole supervision to custodial arrest for ticket-eligible offenses without legal basis.

56. On information and belief, the Authority Defendants failed to adequately train, supervise, and discipline MTAPD officers concerning probable cause, the issuance of desk appearance tickets, and the obligation to release a detainee when probable cause has dissipated. On information and belief, one or more of the Individual Defendants had a documented disciplinary history known to the Authority Defendants before April 22, 2025.

57. These policies, practices, customs, and failures amounted to deliberate indifference to the constitutional rights of persons using the transit system and were the moving force behind the violations of Plaintiff's rights.

58. As a direct and proximate result, Plaintiff suffered the damages described above.

**SIXTH CAUSE OF ACTION**
**False Arrest and False Imprisonment – New York Law**
**(Against All Defendants)**

59. Plaintiff repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

60. The Individual Defendants intended to confine Plaintiff; Plaintiff was conscious of the confinement and did not consent to it. The confinement, from the arrest at approximately 7:11 p.m. on April 22, 2025, until his release without arraignment on April 23, 2025, was not privileged because no probable cause existed at any point.

61. The Individual Defendants acted within the scope of their employment. The Authority Defendants are liable for their torts under the doctrine of respondeat superior.

62. As a direct and proximate result, Plaintiff suffered the damages described above.

**SEVENTH CAUSE OF ACTION**
**Assault and Battery – New York Law**
**(Against All Defendants)**

63. Plaintiff repeats and realleges paragraphs 1 through 62 as if fully set forth herein.

64. In the course of an arrest unsupported by probable cause, the Individual Defendants intentionally placed Plaintiff in apprehension of imminent harmful and offensive contact. They then subjected him to harmful and offensive bodily contact by seizing him and handcuffing him with excessive tightness, without privilege or consent.

65. The Individual Defendants acted within the scope of their employment, and the Authority Defendants are liable under the doctrine of respondeat superior.

66. As a direct and proximate result, Plaintiff suffered the damages described above.

**EIGHTH CAUSE OF ACTION**
**Negligent Hiring, Training, Supervision, and Retention – New York Law**
**(Against the Authority Defendants, in the Alternative)**

67. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth herein.

68. In the alternative, to the extent any Individual Defendant acted outside the scope of his or her employment, the Authority Defendants negligently hired, trained, supervised, and retained the Individual Defendants despite knowing, or having reason to know, of their propensity to engage in the conduct alleged, including, on information and belief, documented prior discipline.

69. That negligence proximately caused Plaintiff's injuries.

**NINTH CAUSE OF ACTION**
**New York Constitution, Article I, §§ 11 and 12**
**(Against All Defendants, in the Alternative)**

70. Plaintiff repeats and realleges paragraphs 1 through 69 as if fully set forth herein.

71. In the alternative, and to the extent damages are not fully available under 42 U.S.C. § 1983, Defendants' conduct deprived Plaintiff of his rights to equal protection and to freedom from unreasonable searches and seizures under Article I, §§ 11 and 12 of the New York Constitution, entitling him to damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, awarding Plaintiff:

(a) Compensatory damages in an amount to be determined at trial;

(b) Punitive damages against the Individual Defendants;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(d) Prejudgment and postjudgment interest as permitted by law; and

(e) Such other and further relief as the Court deems just and proper.

Dated: July 20, 2026
New York, New York

Sean D. Doddy

Sean D. Doddy
THE ALBER FIRM, P.C.
11 Broadway, Suite 615
New York, New York 10004
(631) 333-1600
sdd@alberlegal.com

*Attorney for Plaintiff*